UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WALTER ALBECKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 09 C 0631 |
| v. | ) |
| | ) Judge Ruben Castillo |
| CONTOUR PRODUCTS, INC. (FL), | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Walter Albecker ("Plaintiff") filed this patent action against Contour Products, Inc. ("Defendant") for allegedly infringing upon United States Patent No. 5,836,653 (the "'653 Patent"). (R. 1, Compl. ¶ 8.) Plaintiff is seeking a declaratory judgment and other forms of relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* (*Id.* ¶ 13.) Presently before the Court are the parties' proposed constructions of the disputed claim terms.

### BACKGROUND[1]

The '653 patent is a continuation-in-part of an application that issued as U.S. Patent No. 5,425,567 (the "'567 Patent"). (R. 47, Def.'s Mem., Ex. B at 1.) The application for the '653 patent, which was filed on June 19, 1995, contained three independent claims,[2] eighteen figures,

---

[1] Pursuant to Local Patent Rule 4.2(b), the parties were to submit a Joint Appendix containing the patents in dispute and the prosecution history for each patent. N.D. Ill. LPR 4.2(b). The Joint Appendix submitted in this case was deficient as it failed to provide the complete prosecution history. (*See* R. 46, Joint Appendix.) When referring to the prosecution history, the Court will therefore rely upon the appendix to Defendant's response brief.

[2] A claim is independent if it is completely self-contained. In contrast, a dependent claim contains a reference to a claim previously set forth and specifies a further limitation of the subject matter claimed. 35 U.S.C. § 112. A claim in dependent form incorporates all of the limitations of the claim to which it refers. *Id.*

and twenty-one total claims. (*See id.* at 1, 14-15.) In his application, Plaintiff describes his proposed invention as a generally wedge shaped backrest and legless leisure chair which orients the user's upper back at a higher angle than the user's lower back. (*See id.* at 42.) Notably, this product provided support for the user's lower back by maintaining the lumbar region of the user's back in a relatively natural lordotic curve. (*Id.*) Moreover, it also provided a seat cushion to prevent the user from slipping out of place. (*Id.*)

In July 2006, the United States Patent and Trademark Office ("USPTO" or "Office") examiner issued a communication indicating that the following nine categories of figures contained in Plaintiff's application constituted patentably distinct species of the claimed invention: (1) figures 1A-C; (2) figure 1D; (3) figure 1E; (4) figures 2A-D; (5) figures 2E-F; (6) figures 3A-C; (7) figures 4A-B; (8) figure 4C; and (9) figure 5. (*See id.* at 71-72.) Pursuant to 35 U.S.C. § 121, the USPTO required Plaintiff to "elect a single disclosed species for prosecution on the merits to which the claims shall be restricted if no generic claim is finally held to be allowable."[3] (*Id.* at 72.) The Office then advised Plaintiff that a response to its letter must include an identification of the elected species and a listing of all claims readable onto the elected species. (*Id.*)

Plaintiff, in August 2006, sent the Office a letter indicating his election of figures 1A-C for prosecution on the merits. (R. 47, Def.'s Mem., Ex. B-1 at 74.) He further noted that the claims readable onto his election were claims 11, 13, 14, 16, 17, 18, 19, 20, and 21. (*Id.*) This letter also indicated that Plaintiff believed that claims 11 and 21 were generic. (*Id.*)

---

[3] The statutory basis for the restriction requirement provides: "[i]f two or more independent and distinct inventions are claimed in one application, the Director may require the application to be restricted to one of the inventions." 35 U.S.C. § 121.

2

Approximately four months later, the Office sent Plaintiff a second Office Action outlining its disposition of his claims. (*Id.* at 78.) First, the Office examiner, pursuant to 37 C.F.R. § 1.142,[4] withdrew claims 1-10, 12, and 15 from consideration because they were drawn to a non-elected species. (*Id.* at 79.) Next, the examiner rejected claim 21 as being indefinite for failing to particularly point out and distinctly claim the subject matter which Plaintiff regarded as his invention. (*Id.*) Finally, the examiner rejected claims 11, 13, 14, and 16-21 on obviousness grounds pursuant to 35 U.S.C. § 103(a) ("Section 103").[5] (*See id.*) Despite differing from the prior art in their addition of an "overlying cushion member," a "seat cushion," and a "separate legrest cushion," the examiner found that these claims were unpatentable because these changes would have been obvious in view of the prior art. (*Id.* at 79-81.)

Plaintiff sent the Office a letter in early 2007 in response to its disposition of his claims. (*Id.* at 84.) In his letter, Plaintiff made several changes and presented various arguments to overcome the USPTO's determinations. First, Plaintiff edited claim 21 to overcome the Office's indefiniteness determination. (*Id.* at 87-88.) Second, he amended claims 11 and 21 and, as a result of these changes, argued that his proposed invention cleared the Section 103(a) hurdle to patentability. (*Id.* at 88.) Specifically, he contended that his proposed invention overcame the

---

[4] The regulation states that "[c]laims to the invention or inventions not elected, if not canceled, are nevertheless withdrawn from further consideration by the examiner by the election, subject however to reinstatement in the event the requirement for restriction is withdrawn or overruled." 37 C.F.R. § 1.142(b).

[5] A patent may not be issued for a proposed invention if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a).

3

prior art by providing firm lumbar support.[6] (*Id.* at 88-89.) Finally, he provided additional arguments in which he presents reasons why portions of his proposed invention were not obvious extensions of the prior art. (*Id.* at 90-91.)

On March 5, 1997, Plaintiff was interviewed over the phone by the Office examiner. (*Id.* at 93.) During this interview, claims 1, 4, 11, and 21 were discussed. (*Id.*) Based on this conversation, Plaintiff faxed the Office a letter in which he requested several amendments to the specification and claims in his application.[7] (*Id.* at 95.)

About a week later, the USPTO sent a notice of allowability which noted that claims 1-3 and 5-22 were allowed. (*Id.* at 104.) That same day, the Office sent Plaintiff his notice of allowance and informed him that his application had been examined and allowed for issuance as a patent. (*Id.* at 105.) Plaintiff was issued the '653 Patent on November 17, 1998. (R. 46, Joint Appendix, Ex. A at 1.)

Plaintiff filed this action on January 30, 2009. (R. 1, Compl.) In his complaint, he alleges that Defendant has knowingly and actively induced or aided others in infringing the '653 Patent. (*See id.* at ¶ 8.) Specifically, according to Plaintiff, a patent owned by Defendant's CEO, U.S. Patent No. 6,823,545 (the "'545 Patent"), contains embodiments covered by the '653 Patent. (*Id.* at ¶¶ 17-22.) Thus, Plaintiff alleges that any products made and sold by Defendants which derive from the '545 Patent infringe his patent. (*Id.*) On July 17, 2009, Defendant filed a counterclaim seeking, among other forms of relief, a declaration stating that it has not infringed

---

[6] Plaintiff also differentiated prior art from his proposed invention by noting that the prior art did "not have a lumbar support that is generally uniform in cross section or that is shaped like a generally semi-elliptically shaped cylinder." (R. 47, Def.'s Mem., Ex. B-1 at 89.)

[7] In this set of amendments, Plaintiff cancelled claim 4. (R. 47, Def.'s Mem., Ex. B-1 at 98.)

4

the '653 patent. (R. 17, Def.'s Answer and Countercl. ¶ 14.)

In September 2009, the USPTO issued a communication in response to an ex parte patent reexamination proceeding initiated by Defendant. (R. 47, Def.'s Mem., Ex. G at 2.) After examining the '653 Patent against four primary references, the USPTO determined that the prior art of record failed to anticipate or render obvious claims 1-21 of the '653 Patent because it failed to teach all of the claim limitations of independent claims 1, 10, and 21. (*Id.* at 4.) The Office confirmed the patentability of the '653 Patent because the prior art failed to teach one or more of the following limitations: (1) a top cushion secured to the face of the foundation; (2) a convex contour support having firmness sufficient to generally maintain its convex shape when pressure from a reclining occupant leaning against the foundation is applied; (3) an upper portion whose average general pitch is at a greater incline than the lower portion's average general pitch; and (4) a convex semi-elliptically shaped elongated cylindrical support extending substantially to a lower edge of the face of the foundation. (*Id.*)

On January 13, 2010, the Court ordered briefing by the parties on the proper construction of the disputed terms in the '653 patent. (R. 39, Min. Order.) In March 2010, the Court conducted a *Markman* hearing in which the parties had the opportunity to present their respective positions concerning what claim terms are disputed and how each should be construed. (*See* R. 52, Minute Entry.) Neither party presented witnesses at the hearing. (*Markman* Hr'g Tr. pgs. 1-2.)

## LEGAL STANDARD

An infringement action proceeds in two steps. *Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1281 (Fed. Cir. 2010). First, a court must engage in a claim construction

5

analysis to determine the meaning and scope of the patent claims asserted to be infringed. (*Id.*) The second step centers on a comparison of the properly construed claims to the device accused of infringing. (*Id.*) At this stage of the present infringement action, the Court focuses on the first step of the analysis.

In proceeding with a claim construction analysis, the Federal Circuit has made clear that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). Thus, courts must begin their claim construction analysis with the words of the claim. *Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1142 (Fed. Cir. 2005). The words of the claim are generally given their "ordinary and customary meaning," which is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention. *Id.* The person of ordinary skill in the art would view the claim term in light of the entire intrinsic record. *Id.* Thus, the claims "must be read in view of the specification, of which they are a part." *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). Further, in addition to the words of the claim and the specification, the "the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the court of prosecution, making the claim scope narrower than it would otherwise be." *Phillips*, 415 F.3d at 1317.

In situations where the intrinsic record suffices to resolve any ambiguity in the disputed claim term, it is improper to rely on extrinsic evidence. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). If the intrinsic record fails to resolve ambiguities, a court can then rely upon extrinsic evidence, which "consists of all evidence external to the patent and

6

prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317. The Federal Circuit has noted that while a court may consider extrinsic evidence, it has cautioned that "undue reliance on extrinsic evidence poses the risk that it will be used to change the meaning of claims in derogation of the 'indisputable public records consisting of the claims, the specification and the prosecution history,' thereby undermining the public notice function of patents." *Id.* at 1319.

## ANALYSIS

### I. Independent Claim 10 in the '653 Patent

Based on the representations made by the parties in their written submissions and during the *Markman* hearing, the Court finds that the contested terms contained in independent claim 10 are at the center of this dispute.[8] (*See Markman* Hr'g Tr. at pgs. 3-4, 26; R. 45, Pl.'s Mem. at 3 n.1; R. 47, Def.'s Mem. at 1-2.) Thus, the Court will focus its claim construction analysis on claim 10 and, specifically, limitation (c).[9]

Independent claim 10 reads as follows:

10. A backrest/leisure chair comprising:

(a) a relatively firm generally wedge shaped foundation having a face, a base, a back and two generally triangular sides, with the base being positioned parallel to a horizontal plane such as a floor or bed, and the face being oriented at an acute angle relative to both the base and the horizontal plane to define a generally wedge shape, wherein said face has an upper portion and a lower portion, wherein said upper portion has an average general

---

[8] The parties have asked the Court to construe limitation (b) in independent claim 21, which states the following: "a top cushion having an upper and lower portion secured to the face of said generally wedge shaped foundation." U.S. Patent No. 5,836,653 col. 20 ll. 20-22 (filed Jun. 19, 1995). Since they contain the same operative language, the Court's construction of limitation (c) in independent claim 10 will also apply to limitation (b) in independent claim 21.

[9] The parties have also asked the Court to construe portions of limitations (a) and (b) in independent claim 10 and limitation (a) in independent claim 21. (R. 47, Def.'s Mem., Ex. A.)

pitch relative to the horizontal plane and said lower portion has an average general pitch relative to the horizontal plane, and wherein said face further has a contour which orients the average general pitch of upper portion of the face at a greater incline than the average general pitch of the lower portion;

(b) a means for supporting occupant's lumbar region in a relatively natural lordotic curve comprising a generally convex semi-elliptically shaped elongated cylindrical generally firm lumbar support on the lower portion of the relatively firm foundation and extending substantially to a lower edge of said face, said firm lumbar support having a firmness sufficient to generally maintain its convex shape when pressure from a reclining occupant leaning against the foundation is applied; and

(c) a top cushion having an upper and lower portion secured to the face of the generally wedge shaped foundation.

'653 Patent col. 18 ll. 15-41.

The crux of this dispute is the proper construction of limitation (c). According to Plaintiff, independent claim 10 not only claims two-piece products, but also unitary products wherein the top cushion is "integral and continuous" to the foundation. (*See* R. 45, Pl.'s Mem. at 2-5.) In support of his position, Plaintiff provides the following proposed constructions of the relevant language in limitation (c):

| Term | Plaintiff's Proposed Construction |
|---|---|
| "a top cushion" | Defined as "the top 4" of material on the face of the foundation." Alternatively, defines the term as "the cushioning material on 'the face of the foundation.'" |
| "secured to" | Defined as "generally fixed" or "firmly in position." |

| | |
|---|---|
| "the face of the generally wedge shaped foundation" | Defined as the sloped spatially defined surface of the "material" below "the top 4" of material on the face of the foundation." Also states that the "the face of the foundation" is the inclined portion of the foundation below where the "top cushion" meets the face of the foundation. Further, Plaintiff notes that this "surface or boundary may be defined by a seam or by a boundary where the top cushioning material is different from the foundation." |

(*Id.* at 3-14.)

Defendant contends that, as a result of limitation (c), independent claim 10 only claims two-piece products. (R. 47, Def.'s Mem. at 1.) Its proposed constructions of limitation (c) are as follows:

| Term | Defendant's Proposed Construction |
|---|---|
| "a top cushion" | Defined as "a separate cushion that is placed on top of the generally wedge shaped foundation and secured to its face using attachment means." |
| "secured to" | Defined as "attached using attachment means, such as an adhesive or mechanical type fasteners that might be used with material that is selected for the top cushion and foundation." |
| "the face of the generally wedge shaped foundation" | Defined as "the top surface (face) of the foundation upon which a separate top cushion is to be secured." |

(*Id.* at Ex. A.)

With these proposed constructions in mind, the Court proceeds to applying the claim construction framework set forth by the Federal Circuit.

9

### A. Intrinsic Record of the '653 Patent

#### 1. Claim language

The claims themselves can "provide substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314. Indeed, the Federal Circuit has noted that the context in which a term is used in the asserted claim can be highly instructive. *Id.* Further, other "claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term." *Id.* Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims. *Id.*

The parties dispute the meaning of the claim term "secured to." According to Plaintiff, the term "secured to" in independent claim 10 is consistent with both a unitary and two-piece product. (*See* R. 51, Pl.'s Reply at 7-8.) For Defendant, the term's presence in claim 10 precludes a construction permitting a unitary product. (R. 47, Def.'s Mem. at 14.) Based on its reading of the relevant term, both in independent claim 10 and in other claims in the '653 Patent, the Court finds that its usage suggests that Defendant's proposed construction is proper.

Aside from its presence in limitation (c) and comparable usage in independent claims 1 and 21,[10] the term "secure" or "secured" is used four times throughout the '653 patent claims. *See* '653 Patent col. 18, ll. 2, 13; col. 19, ll. 4, 15. In each of those instances, the term is used to refer to the physical attachment of two separate pieces. For example, claims 7 and 20 use the term to note the physical attachment of two pieces: claim 7 describes "a seat cushion having an

---

[10] Limitation (b) in independent claim 1 provides for "a softer top cushion having an upper and lower portion secured to the face." '653 Patent col. 17, l. 35. Limitation (b) in independent claim 21 provides for a "a top cushion having an upper and lower portion secured to the face of said generally wedge shaped foundation." *Id.* at col. 20, l. 21.

attachment means secured to the lower portion of the foundation"; in claim 20, a "pillow has an attachment means to secure it near the top of the generally wedge shaped foundation." *Id.* at col. 18, l. 2; col. 19, l. 4. Thus, when used in other portions of the claims, the term "secure" or "secured" indicates a relationship whereby one piece is physically attached to another piece of the product. Because "[a] claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent," *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001), the Court finds that an examination of the claim language points in favor of Defendant's proposed construction of the term "secured to."[11]

Plaintiff provides one discernible claim-language based argument in support of his proposed construction. In his briefs, he contends that independent claim 10 includes a unitary product wherein a "top cushion is integral and continuous with the generally wedge shaped foundation" because "limitations in a dependent claim 'are implicitly permitted . . . by extension' in the independent claims from which they depend." (R. 45, Pl.'s Mem. at 6-8.) The Court finds this argument unpersuasive as it is unclear whether dependent claim 11 is a limitation or an extension of independent claim 10.[12]

### 2. Specification

The specification contains a "written description of the invention which must be clear and

---

[11] The Court notes that the parties did not provide any discussion regarding the meaning of the preposition "to" in the term "secured to."

[12] Plaintiff also invokes the doctrine of claim differentiation in support of his position. (R. 51, Pl.'s Reply at 7-9.) Under this doctrine, "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Enzo Biochem, Inc. v. Applera Corp.*, No. 2009-1281, 2010 WL 1135563, at *14 (Fed. Cir. Mar. 26, 2010). This argument fails because it is unclear whether dependent claim 11 is indeed a limitation on independent claim 10.

complete enough to enable those of ordinary skill in the art to make and use it." *Vitronics*, 90 F.3d at 1582. Thus, the Federal Circuit has noted that the specification is always highly relevant to the claim construction analysis. *Id.* Indeed, it is usually dispositive and is considered the single best guide to the meaning of a disputed term. *Id.*

Portions of the '653 Patent specification also support Defendant's proposed construction of the term "secured to." In the specification, the term "secure" or "secured" is used at various points. *See* '653 Patent col. 6, l. 50; col. 8, ll. 34, 36-39, 58; col. 10, ll. 60, 63, 67; col. 12, l. 27. Consistent with its usage in the claims, the use of the term in the specification indicates a relationship between two or more pieces. (*See id.*) Specifically, it suggests the physical attachment of two pieces. For example, the specification describes: a seat cushion designed to prevent the user from sliding down which must be "secured" directly or indirectly to the foundation "so that the user won't slide down and move the seat cushion while he or she slides down"; a head pillow attached to straps which are "secured to the support foundation"; and a piece of upholstery "secured around the support foundation and . . . around the main cushion." *Id.* at col 8, ll. 32-39; col. 10, ll. 59-61; col. 12, ll. 26-28.

Further, other portions of the specification also shed some light upon the meaning of the term "secured to." In describing the convex lumbar support in an embodiment depicted by figure 1A, the specification notes that it "can be integral and continuous with the foundation, *or* can be secured to the top of the lower portion of the foundation." *Id.* at col. 6, ll. 48-51 (emphasis added). The use of the term "or," which the Federal Circuit has noted indicates the presentation of alternatives unless given a different meaning, *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1330 (Fed. Cir. 2001), strongly suggests that the term "secured to" in independent

claim 10 cannot also mean "integral and continuous." As a result, this portion of the intrinsic record indicates that limitation (c) is satisfied not by a unitary "integral and continuous" product, but by a product whose separate pieces are attached, or "secured to," one another. Thus, the term's use in the specification–along with its usage in the claim language–leads the Court to adopt the following construction of the term "secured to": "attached using attachment means, such as an adhesive or mechanical type fasteners that might be used with material that is selected for the top cushion and foundation."

In his opening brief, Plaintiff argues that the construction of the term "top cushion" buttressed his understanding of independent claim 10. (R. 45, Pl.'s Mem. at 4-5.) Specifically, Plaintiff argues that he gave the term "top cushion" a special meaning that supports his proposed construction of limitation (c). (*Id.*) Indeed, the specification for the '653 Patent does provide a special meaning for the term "top cushion." '653 Patent col. 10, ll. 8-12 ("For the purposes of the claims, the top 4" of material on the face of the foundation is considered to be the top cushion and though it may be technically the same material, it is considered as a foundation with a top cushion."). Where an inventor has given a term a special meaning, the Federal Circuit has held that the "inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. Defendant does not provide any argument grounded in the intrinsic record in opposition to Plaintiff's proposed construction of the term "top cushion." (*See* R. 47, Def.'s Mem.) Thus, the Court adopts the following construction for the term "top cushion" proposed by Plaintiff: "the top 4" of material on the face of the foundation or the cushioning material on 'the face of the foundation.'" (R. 45, Pl.'s Mem. at 4.)

While the parties contest the meaning of the terms "top cushion" and "secured to," they

fail to properly address the construction of another term they ask the Court to construe: "the face of the generally wedge shaped foundation." (*See* R. 45, Pl.'s Mem. at 14-15; R. 47, Def.'s Mem.) Based on its reading of the claims and specification, the Court construes "the face of the generally wedge shaped foundation" as meaning the "top surface of the wedge shaped foundation."

### 3.    Prosecution history

The prosecution history consists of the complete record of the proceedings before the USPTO and includes the prior art cited during the examination of the patent. *Phillips*, 415 F.3d at 1317. Like the specification, the prosecution history provides evidence of how the USPTO and the inventor understood the patent. *Id.* The prosecution history can often inform the meaning of the claim language by "demonstrating how the inventor understood the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* When considering the prosecution history, a court may also look to reexamination proceedings for guidance. *See C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004).

The prosecution history of the '653 patent supports the conclusion that limitation (c) is not satisfied by a unitary product with a top cushion that is integral and continuous with the foundation. In response to Plaintiff's election of species for prosecution on the merits, the Office Action rejected what would become claim 10 on obviousness grounds.[13] (R. 47, Def.'s Mem., Ex. B-1 at 79-80.) While noting that the prior art did not show an "overlying cushion member," the Office found that to have included such a member for support "would have been an obvious

---

[13] The communication from the Office indicates that claim 11 was unpatentable over the prior art. (R. 47, Def.'s Mem., Ex. B-1 at 79-80.) Claim 11 became independent claim 10 once claim 4 was cancelled.

14

modification to one with ordinary skill in the art." (*Id.* at 80.) Thus, in its comparison of the '653 application to the prior art, it is evident that the USPTO considered the proposed invention as consisting of a foundation with an "overlying cushion member." In his subsequent communications with the Office, Plaintiff did nothing to suggest that the cushion could have been alternatively "overlying" and "integral and continuous." The Court finds that the USPTO's apparent understanding of the '653 application is inconsistent with a reading of independent claim 10 which would claim a unitary product.

Similarly, the reexamination proceedings also suggest that the USPTO understood the '653 patent as a two-piece product. In the proceedings, the USPTO made clear that the prior art failed to anticipate or render obvious the claims in the '653 patent because, among other things, the prior art failed to teach a "top cushion secured to the face of the foundation." (R. 47, Def.'s Mem., Ex. G at 4.) While standing alone this statement is unhelpful, its meaning is clarified when understood in its context. Specifically, the USPTO found that the "top cushion" limitation allowed the '653 patent to overcome two references that only teach: (1) "a pillow with a cover"; and (2) "a single pillow structure." (*Id.* at 5-6.) Thus, in the reexamination proceedings, the USPTO compared the '653 patent to unitary "pillow" structures and found that it overcame prior art because it contained "a top cushion secured to the face of the foundation." (*Id.* at 4.) Based on its reading of the reexamination statement, the Court finds that the USPTO understood the '653 Patent as claiming a two-piece product.

Plaintiff argues that an interpretation of limitation (c) which would exclude disclosed embodiments describing a unitary product would run afoul of claim construction principles. (R. 51, Pl.'s Reply at 13.) Indeed, the Federal Circuit has noted that courts should avoid interpreting

15

"claim terms in a way that excludes embodiments disclosed in the specification." *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276 (Fed. Cir. 2008). Interpretations of claim terms which exclude disclosed embodiments are acceptable, however, "where those disclosed embodiments are clearly disclaimed in the specification or prosecution history." *Id.* at 1277.

In this case, the Court's interpretation of limitation (c) would exclude the embodiment disclosed in figure 1E, which describes a unitary product wherein the top cushion is integral and continuous with the generally wedge shaped foundation. The Court's interpretation of the relevant claim terms is acceptable, however, because the excluded disclosed embodiments were subject to a restriction requirement by the USPTO, and thus not claimed by Plaintiff. In his response to the initial Examiner Action setting forth the restriction requirement, Plaintiff unambiguously elected the species shown in figures 1A-C–and not figure 1E–for prosecution on the merits. (R. 47, Def.'s Mem., Ex. B-1 at 74.) Because these disclosed embodiments were not elected by Plaintiff in proceeding with his application, the Court finds that its interpretation of limitation (c) does not impermissibly exclude disclosed embodiments.[14]

Accordingly, the Court finds that the prosecution history in this case supports the aforementioned constructions of the terms in limitation (c).

---

[14] Plaintiff argues that the embodiment in figure 1E was not subject to a restriction requirement because independent claims 10 and 21 were generic. (R. 45, Pl.'s Mem. at 10.) While the presence of a generic claim would have rendered the election of any disclosed species unnecessary, there is nothing in the record indicating that the USPTO believed that independent claims 10 and 21 were generic. The record does indicate that Plaintiff believed independent claims 10 and 21 were generic, but it does not indicate that the USPTO believed that they were. (R. 47, Def.'s Mem. at 74.) In fact, the record indicates that the examiner believed that no claim was generic. (*Id.* at 72.) Plaintiff points to no portion of the record suggesting that the USPTO found that the independent claims 10 and 21 were generic.

## B.   Extrinsic evidence

While extrinsic evidence can shed useful light on the relevant art, it is less significant than the intrinsic record in determining the legally operative meaning of claim language. *Phillips*, 415 F.3d at 1317. Where the intrinsic record suffices to resolve any ambiguity in the disputed claim term, it is improper to rely on extrinsic evidence. *Vitronics Corp.*, 90 F.3d at 1583. Here, Plaintiff uses extrinsic evidence in the form of unrelated patents to support his proposed construction of the term "secured to." (*See* R. 45, Pl.'s Mem. at 12-14; R. 51, Pl.'s Reply at 5-6.) Because the intrinsic evidence in this case resolves any ambiguity surrounding the disputed claim terms, the Court finds an examination of extrinsic evidence unnecessary.

## II.   Other Disputed Terms in the '653 Patent

The parties also dispute the meaning of several additional claim terms. (*See* R. 47, Def.'s Mem., Ex. A at 1-3.) Based on the representations made to the Court, this dispute centers on one question: whether limitation (c) in independent claim 10 is satisfied by a unitary product.[15] Because the Court finds that the construction of the terms "top cushion," "secured to," and "the face of the generally wedge shaped foundation" answer this central question, it will not proceed in construing any additional terms. See *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("Although patent claims are construed objectively and without reference to the accused device, only those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy.")

---

[15] The parties have also noted that this dispute boils down to an interpretation of claim 10 and, specifically, limitation (c). (*See Markman* Hr'g Tr. at pgs. 3-4, 26; R. 45, Pl.'s Mem. at 3 n.1; R. 47, Def.'s Mem. at 1-2.)

17

## CONCLUSION

The disputed terms are construed in accordance with the constructions set forth above. This lawsuit is set for a status hearing on May 19, 2010 at 9:45 a.m. to discuss the future status of this litigation. The parties should exhaust all settlement possibilities in light of this opinion.

Entered: /s/ Ruben Castillo

**Judge Ruben Castillo**
**United States District Court**

**Dated:** May 3, 2010